1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

9   MARY KEATING and WILLIAM KEATING,     )     3:08-cv-00609-RCJ-RAM
                                          )
10                  Plaintiffs,            )
                                          )
11           v.                           )     **ORDER**
                                          )
12   JAMES ARTHUR GIBBONS, JR., in his    )
     individual and official capacities, ANDREW )
13   CLINGER, in his individual and official )
     capacities; the STATE OF NEVADA; DOES )
14   I-XX, inclusive; DOES XXI-XXX, inclusive, )
                                          )
15                  Defendants.           )
     _____ )

16

17          Currently before this Court is a Motion for Judgment on the Pleadings (#46) filed by

18   Defendants James Arthur Gibbons, Jr. ("The Governor"), Andrew Clinger ("Clinger") and State

19   of Nevada ("State") (collectively "Defendants"). Plaintiff Mary Keating ("Keating") filed a Motion

20   to Amend Complaint (#66). Oral argument on these motions was heard before the Court on

21   March 12, 2010.

22                                    **I. BACKGROUND**

23          Plaintiff Keating has worked for the State of Nevada as a classified employee for over

24   25 years, during which time she alleges she consistently received good job performance

25   reviews. In 2001, Keating was appointed to an Administrative Services Officer (ASO) IV

26   position with the Department of Administration in accordance with NRS 284.3775(1). In 2002,

27   Keating was placed on permanent status as Division Administrator in the ASO IV position. Her

28   duties in this position included oversight of expenditures made by the Governor of the State

of Nevada and his Administration.  Accordingly, in March and April of 2007, Keating became aware of the Governor's excessive personal use of his state-owned cell phone, which apparently included extensive text messaging to a woman who was not the Governor's wife. Keating raised this issue with Clinger, the Director of the Department of Administration, and the matter was apparently brought to the attention of the Governor's office.  As a result, the Governor eventually reimbursed the State for his use of the cell phone for personal calls and texts.

On or about May 15, 2008, Keating was told by Clinger that her employment with the State was being terminated.  According to Keating, she was not counseled or warned of any job deficiency and received no progressive discipline, advance notice or right to a hearing before being notified of the termination.  The only explanation given for the employment action was that Keating did not "get along."   Keating was told that, as an alternative to being terminated, she could choose to resign, retire or accept a temporary ASO IV position in the Department of Conservation and Natural Resources.  Keating felt she had no choice but to accept the temporary position.  Keating was subsequently hired into a permanent ASO IV position in the Department of Health and Human Services.

Apparently, about five weeks prior to Keating's transfer from her Department of Administration position, members of the press had contacted the Governor's office and requested the Governor's cell phone and text message records.  According to Keating, she was informed that her employment in the Department of Administration was terminated because the Governor believed Keating had leaked information to the press about his excessive personal use of his State-owned cell phone.  Keating therefore claims that Clinger and the Governor retaliated against her based upon their belief that Keating spoke to the press about the Governor's cell phone use.  Keating also claims that Clinger retaliated against her because she had complained about Clinger's sexually oriented conduct in the workplace in March of 2006.

Keating asserts that the Governor, Clinger and Ben Kieckhefer, Press Secretary to Gibbons, issued a false statement to the press in October of 2008 to explain that the

1  employment action taken against Keating was "work performance related." Keating claims that

2  some of her co-workers perceive the employment action taken against her to be a form of

3  punishment for reporting the Governor's cell-phone activity or some other unknown

4  wrongdoing.

5      Plaintiff filed this lawsuit in state court on October 24, 2008, asserting claims of civil

6  rights violations pursuant to 42 U.S.C. § 1983 and various state law claims.  Plaintiff seeks

7  damages and injunctive relief in the form of reinstatement to her former position in the Nevada

8  Department of Administration.  On November 18, 2008, Defendants successfully removed the

9  action to federal court.  After Defendants filed their Motion for Judgment on the Pleadings,

10 Plaintiff moved for leave to amend and attached a proposed Amended Complaint.  The

11 Amended Complaint (Motion to Amend (#66), Ex. A) indicates that Plaintiff seeks to eliminate

12 her claims of civil conspiracy and loss of consortium asserted in the original complaint.

13 Plaintiff also seeks to add Kieckhefer as a new defendant based upon his alleged involvement

14 in issuing the defamatory press release regarding the reason Keating was eliminated from the

15 Department of Administration.  In addition, Plaintiff seeks to add a cause of action against all

16 defendants for termination/demotion in violation of NRS Chapter 284.

17                                    **III.  LEGAL STANDARDS**

18 **A.    Motion to Amend**

19     When a party can no longer amend a pleading as a matter of right under Rule 15(a),

20 the party must either petition the court for leave to amend or obtain consent from the adverse

21 parties.  Fed.R.Civ.P. 15(a); Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir. 1983).  Leave

22 to amend "shall be freely given when justice so requires."  Id.; Keniston, 717 F.2d at 1300.

23 This policy is to be applied with "extreme liberality."  Eminence Capital, LLC v. Aspeon, Inc.,

24 316 F.3d 1048, 1051 (9th Cir. 2003).  However, a district court may deny leave to amend "due

25 to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

26 deficiencies by amendments previously allowed, undue prejudice to the opposing party by

27 virtue of allowance of the amendment, and by futility of the amendment."  Manzarek v. St. Paul

28 Fire & Marine Ins. Co., 519 F.3d 1025, 1034 (9th Cir. 2008) (internal quotations and citations

                                          3

1   omitted).  Prejudice to the defendant is the most important factor, but amendment may be

2   denied upon a sufficiently strong showing of the other factors.  See Eminence Capital, 316

3   F.3d at 1300.

4   **B.   Motion for Judgment on the Pleadings**

5           "After the pleadings are closed, but within such time as not to delay the trial, any party

6   may move for judgment on the pleadings."  Fed.R.Civ.P. 12(c).  "Judgment on the pleadings

7   is proper when the moving party clearly establishes on the face of the pleadings that no

8   material issue of fact remains to be resolved and that it is entitled to judgment as a matter of

9   law."  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir.

10  1989).

11          In this case, Rule 12(c) is used to raise the defense of failure to state a claim.

12  Therefore, the motion for judgment on the pleadings faces the same test as a motion under

13  Rule 12(b)(6) - dismissal is proper "only if it is clear that no relief could be granted under any

14  set of facts that could be proven consistent with the allegations."  See McGlinchy v. Shell

15  Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988) (quoting Hishon v. King & Spalding, 467 U.S.

16  69, 73 (1984)).  Thus, not only must the court accept all material allegations in the complaint

17  as true, but the complaint must be construed, and all doubts resolved, in the light most

18  favorable to the plaintiff. Id.  Nonetheless, conclusory allegations without more are insufficient

19  to defeat a motion to dismiss for failure to state a claim.  Id.

20                                  **IV.  ANALYSIS**

21

22  **A.   Plaintiff's Motion to Amend**

23          For the following reasons, the Court finds that justice requires it to grant Plaintiff's

24  request to amend her complaint.  First, permitting the amendment will not unduly delay the

25  case because full discovery has not yet occurred.  Second, allowing the amendment will not

26  unduly prejudice Defendants, as they have responded to Plaintiff's amended allegations in

27  their Opposition to the Motion to Amend.  Third, there is no indication that Plaintiff's request

28  to amend is done in bad faith.  Defendants oppose the proposed amendment, primarily on the

4

1  basis that "claims against Kieckhefer are futile, as they would be subject to dismissal" and

2  Keating has no claim under NRS 284.383-90 because she was not dismissed or demoted.

3  In other words, Defendants argue that the proposed amendment would be futile.

4      However, under Rule 15's extreme liberality standard, Plaintiff's motion to amend

5  cannot be denied as futile.  "The proper test to be applied when determining the legal

6  sufficiency of a proposed amendment is identical to the one used when considering the

7  sufficiency of a pleading challenged under Rule 12(b)(6)."  Miller v. Rykoff-Sexton, Inc., 845

8  F.2d 209, 214 (9th Cir. 1988).  Although the basis of Plaintiff's new claims may not be entirely

9  clear at this time, accepting the factual allegations of the proposed Amended Complaint as

10  true and construing them in the light most favorable to Plaintiff, the claims withstand a Rule

11  12(b)(6) motion.  To find otherwise would require the Court to conduct a detailed and

12  speculative analysis of Plaintiff's claims, and such analysis is inappropriate at this stage.

13  **B.   Constitutional Claims Under 42 U.S.C. § 1983**

14

15      Plaintiff brings claims under 42 U.S.C. § 1983 against the Governor, Clinger and

16  Kieckhefer in their individual and official capacities as employees of the State of Nevada.

17  However, a claim against a municipal officer in his official capacity is essentially a claim

18  against the municipal entity.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Therefore,

19  Plaintiff's official capacity claims against the individuals are redundant because the State of

20  Nevada is already a named Defendant subject to Plaintiff's section 1983 claims.  Accordingly,

21  the Court dismisses Plaintiff's claims asserted against the individual Defendants in their official

22  capacity.  This leaves Plaintiff with section 1983 claims against the individual Defendants in

23  their individual capacity.

24      Plaintiff alleges that her First and Fourteenth Amendment rights were violated by the

25  individual Defendants.  Section 1983 requires a plaintiff to prove that (1) a person acting under

26  color of state law (2) committed an act that deprived him of some right, privilege, or immunity

27  protected by the Constitution or federal law.  Federation of African Am. Contrs. v. City of

28  Oakland, 96 F.3d 1204, 1216 (9th Cir. 1996); Vandermeer v. Douglas County, 15 F. Supp.2d

970, 984 -85 (D.Nev. 1998).  The first inquiry in any section 1983 action is whether the plaintiff has been deprived of a right secured by the Constitution or federal laws.  See Baker v. McCollan, 443 U.S. 137, 142-47 (1979); see also Allen v. Portland, 73 F.3d 232, 235 (9th Cir. 1995).

        1.    First Amendment Claims

Plaintiff claims that the Governor and Clinger retaliated against her because they believed she spoke to the press about the Governor's excessive personal text messaging on his state-owned cell phone.  Plaintiff also asserts that Clinger retaliated against her for complaining about his inappropriate sexually-oriented conduct with his wife in the workplace. To prevail on her First Amendment retaliation claim, Plaintiff must show that: (1) she engaged in constitutionally protected speech; (2) Defendants took an adverse employment action against her; and (3) Plaintiff's speech was a "substantial or motivating" factor for the adverse employment action.  Marable v. Nitchman, 511 F.3d 924, 929 (9th Cir. 2007) (citing Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003)).  The Ninth Circuit recently clarified and explained the appropriate approach to assessing a First Amendment retaliation claim in Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009).  The court outlined a five-step series of factors to be considered in a First Amendment retaliation case: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in an adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.  Id. Because these are sequential steps, failure to fulfill any one of the Eng factors necessarily concludes the inquiry.  See Huppert v. City of Pittsburg, 574 F.3d 696, 703 (9th Cir. 2009).

*Perceived Speech to the Press About the Governor's Cell Phone Use:*  Plaintiff alleges that the Governor and Clinger retaliated against her for "perceived speech on matters of public concern, i.e., improper expenditures of State funds and improper use of State time by

1    Defendant Gibbons."  However, Plaintiff does not assert that she actually engaged in any of

2    the perceived speech, thereby making it impossible to evaluate the nature of the speech with

3    regard to what was actually said, in what context, and in what form.  Moreover, no authority

4    exists to support Plaintiff's theory that retaliation based upon erroneously perceived speech

5    establishes a constitutional violation in the Ninth Circuit.  The circuit courts that have

6    addressed this issue have concluded that the First Amendment affords no protection to

7    speech that the employee did not actually utter.  See, e.g., Jones v. Collins, 132 F.3d 1048,

8    1054 (5th Cir. 1998);  Fogarty v. Boles, 121 F.3d 886, 890 (3d Cir. 1997);  Barkoo v. Melby,

9    901 F.2d 613 (7th Cir. 1990).  The Court concludes that, as a matter of law, to the extent

10   Plaintiff's retaliation claim relies upon Defendants' mistaken belief that she spoke to the press,

11   Plaintiff's First Amendment claim should be dismissed.

12        *Complaints About Clinger's Inappropriate Sexual Conduct:* Plaintiff's retaliation claim

13   is also based upon her allegation that Clinger "was motivated by a desire to retaliate against

14   [her] for having complained of his improper sexually oriented conduct with his wife."  Plaintiff

15   had also allegedly complained about Clinger's verbal abuse in response to Plaintiff's effort to

16   discuss the conduct with Clinger.  However, Plaintiff fails to allege any causal connection

17   between her complaints and the alleged adverse employment action.  "[I]n some [retaliation]

18   cases, causation can be inferred from timing alone where an adverse employment action

19   follows on the heels of protected activity."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,

20   1065 (9th Cir. 2002).  However, "timing alone will not show causation in all cases; rather, 'in

21   order to support an inference of retaliatory motive, the termination must have occurred fairly

22   soon after the employee's protected expression.'"  Id.  Moreover, in order for temporal

23   proximity between an employer's knowledge of protected activity and an adverse employment

24   action to establish causality for a prima facie case of retaliation, the temporal proximity must

25   be very close.  See Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citing

26   cases finding that a three or four month period is insufficiently close to prove causation).

27   ///

28

7

1   In this case, approximately two years had passed between the time when Plaintiff
2   complained about Clinger's inappropriate conduct and the employment action taken against
3   Plaintiff.  The Court finds that this period of time, as a matter of law, is insufficient to establish
4   causation for Plaintiff's retaliation claim related to her complaints of Clinger's conduct.

5   *Qualified Immunity*:  Defendants assert that the Governor and Clinger are entitled to
6   qualified immunity with respect to Plaintiff's First Amendment retaliation claims.  However,
7   having concluded that the Governor and Clinger committed no constitutional violations, the
8   Court need not consider whether qualified immunity applies.  See Hart v. Parks, 450 F.3d
9   1059, 1071 (9th Cir. 2006) (citing Saucier v. Katz, 533 U.S. 194 (2001)).

10      2.    Fourteenth Amendment Claims

11  Plaintiff asserts substantive and procedural due process claims under the Fourteenth
12  Amendment on the basis that she suffered an arbitrary adverse employment action without
13  adequate notice and a hearing.  Defendants argue that Plaintiff has failed to state a valid
14  Fourteenth Amendment claim because she did not suffer deprivation of a protected liberty or
15  property interest.  In particular, Defendants maintain that (1) Plaintiff was not actually
16  terminated and no liberty or property interest exists in employment in a particular employment
17  position; (2) Plaintiff was not denied procedural due process, and (3) the Governor and Clinger
18  are protected by qualified immunity.

19  *Procedural Due Process Claims:*  The Fourteenth Amendment protects individuals from
20  the deprivation of property without due process of law.  There are three elements for
21  procedural due process claims under Section 1983: (1) a property interest protected by the
22  Constitution; (2) a deprivation of that interest by the government; and (3) a lack of process.
23  Protman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).  Plaintiff's proposed
24  Amended Complaint alleges the deprivation of a property interest in her "continued
25  employment."  Plaintiff also asserts that the adverse employment action taken by Defendants
26  deprived her of her due process rights.  However, Plaintiff's deprivation of property claim lacks
27  merit because she has failed to show that any deprivation of a property interest actually

occurred.    Plaintiff was not deprived of continued employment, nor was her salary or classification reduced as a result of Defendants' alleged conduct.    Thus, Plaintiff's alleged employment actions are not a deprivation of a property interest cognizable as a procedural due process claims and these claims will be dismissed.

*Substantive Due Process Claims:* "A threshold requirement to a substantive due process claim is the showing of a fundamental liberty or property interest protected by the Constitution." Enqist v. Oregon Dept. of Agriculture, 478 F.3d 985, 996 (9th Cir. 2007).  To sustain a substantive due process claim, a plaintiff must establish facts demonstrating a deprivation of "life, liberty or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998).  Most federal courts have held that a public employee's state law created right to employment is not a fundamental interest entitled to substantive due process under the Constitution. See Nicholas v. Pennsylvania State University, 227 F.3d 133, 142-43 (3d Cir. 2000) (citing cases from the Second, Fourth, Seventh, Eighth and Eleventh Circuits). The Ninth Circuit has made it clear that occupational liberty claims, under the substantive due process clause, are sustainable only in "extreme cases," such as a government blacklist, where a plaintiff can show a "complete prohibition on entry into a profession." Engquist, 478 F.3d at 998.

In her proposed Amended Complaint, Plaintiff alleges that she had a "legal right and expectation of continued employment, constituting a property interest in her employment." (Am. Complaint (#66), ¶¶ 106, 117).  Plaintiff also alleges that "[t]her employment action taken by Defendants against [her] was arbitrary, without reasonable basis, and shocking to the conscience." Id., ¶ 118.  These allegations are not equivalent to the "extreme" circumstances contemplated by the Ninth Circuit and she does not allege that a particular profession is foreclosed to her.  Furthermore, Plaintiff fails to respond to Defendants' arguments regarding substantive due process and essentially concedes by this silence that she has no valid substantive due process claim.  Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment substantive due process claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.     State Common Law Claims**

1.     <u>Breach of Contract</u>

In Nevada, "[e]mployment contracts are ordinarily and presumably contracts which are terminable at will; however, an employer may expressly or impliedly agree with an employee that employment is to be for an indefinite term and may be terminated only for cause or only in accordance with established policies or procedures." <u>D'Angelo v. Gardner</u>, 819 P.2d 206, 211 (Nev. 1991). Nevada's statutory and regulatory state employment scheme indicates that permanent, classified state employees are more than mere "at will" workers. <u>Burson v. State of Nev.</u>, 1992 WL 246915, *3-4 (D.Nev.1992). Thus, Plaintiff asserts that, as a classified employee of the State of Nevada, she had a "contractual right to continued employment and a contractual right not to be terminated without good cause, without prior progressive discipline and/or without prior notice and hearing." However, Plaintiff's allegations do not sufficiently assert a breach of contract claim. In particular, Plaintiff fails to identify the contract that her contractual rights arise from. Moreover, Plaintiff's argument in opposition to Defendants' motion does nothing to support her breach of contract claim.

Defendants persuasively argue that a classified state employee's entitlement to continued employment, if any exists, is defined by statute and not by contract. Indeed, Nevada has implemented procedures designed to protect the interests of classified permanent state employees. <u>See</u> NRS Chapter 284. Accordingly, it appears that Plaintiff's breach of contract claim should be dismissed and allegations regarding the violation of her statutory employment rights should be considered in the context of her claim of "discharge/demotion in violation of NRS Chapter 284" - a claim that has been added as a Sixteenth Claim for Relief in Plaintiff's proposed Amended Complaint. A discussion of the viability of this claim follows below.

///

///

///

10

1

2.    <u>Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith Discharge)</u>

2

3      A bad faith discharge tort is committed when "an employer, acting in bad faith,

4 discharges an employee who has established contractual rights of continued employment and

5 who has developed a relationship of trust, reliance and dependency with the employer." <u>See</u>

6 <u>Clements v. Airport Authority of Washoe County</u>, 69 F.3d 321, 335-36 (9th Cir. 1995) (quoting

7 <u>D'Angelo v. Gardner</u>, 819 P.2d 206, 211 (Nev. 1991)).  As discussed above, it does not appear

8 that Plaintiff's public employment, as defined by statute, gave rise to any contractual rights of

9 continued employment.  Moreover, under Nevada law, a bad-faith discharge claim is available

10 in only a "narrow class of cases in which, because of the relationship of employer to employee,

11 the offending conduct 'goes well beyond the bounds of ordinary liability for breach of contract.'"

12 <u>Id.</u> (quoting <u>D'Angelo</u>, 819 P.2d at 215); <u>see also</u> <u>Martin v. Sears, Roebuck and Co.</u>, 899 P.2d

13 441, 555 (Nev. 1995) (the employer's conduct must go "well beyond the bounds of ordinary

14 liability for breach of contract.").  Such a special relationship must be analogous to the kind of

15 special reliance, trust and dependency that is typically present in insurance cases.  <u>Id.</u>  The

16 Nevada Supreme Court looks for facts such as promise of employment "until retirement,"

17 lengthy duration of employment, and termination characterized by "deception," "perfidy," and

18 "betrayal."  <u>Id.</u>

19      Plaintiff has alleged no facts which give rise to the inference that such a special

20 relationship existed.  Something beyond the ordinary civil service relationship must be present.

21 Accordingly, dismissal of this claim is appropriate.

22    3.    <u>Tortious Discharge in Violation of Public Policy</u>

23      In her proposed Amended Complaint, Plaintiff alleges that her employment was

24 terminated in retaliation for reporting the Governor's excessive text messaging as a violation

25 of NRS 281A.400(7), which prohibits a public employee from using government time, property

26 or equipment to benefit his personal or financial interests.  Although the tortious discharge

27 claim arises out of the employer-employee relationship, such a claim does not depend on a

28 contract of continued employment between the employee and the employer.  <u>D'Angelo</u>, 819

P.2d at 216.  A tortious discharge may exist "when an employer dismisses an employee in retaliation for the employee's doing of acts which are consistent with or supportive of sound public policy and the common good."  Clements, 69 F.3d at 336 (quoting D'Angelo, 819 P.2d at 216).  However, the Nevada Supreme Court has repeatedly held that "public policy tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy."  Wayment v. Holmes, 912 P.2d 816, 818 (Nev.1996) (quoting Sands Regent v. Valgardson, 777 P.2d 898, 900 (1989) (concluding that a legislative public policy against age discrimination was not sufficiently strong to warrant an exception to the at-will employment doctrine)).

Without citing any authority, Plaintiff states in her opposition that retaliation for reporting improper expenditure of government funds is contrary to public policy and can therefore form the basis of a tortious discharge claim.  However, this case does not present facts or issues similar to those where a tortious discharge in violation of public policy has been found in Nevada.  See D'Angelo, 819 P.2d 206 (violations of public policy occurred where employers terminated employees for (1) refusing to violate the law, (2) refusing to work under conditions unreasonably dangerous to the employee, or (3) accepting jury duty); see also Hansen v. Harrah's, 675 P.2d 394 (violation of public policy occurred when an employer terminated an employee who filed a workman's compensation claim).  Accordingly, the Court finds that retaliation for reporting improper expenditure of government funds is not contrary to public policy and therefore dismisses the tortious discharge claim.

4.   Intentional Interference with Contractual Relations

Intentional interference with contractual relations under Nevada law requires the plaintiff to establish five elements: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage.  J.J. Indus., LLC v. Bennett, 71 P.3d 1264, 1267 (Nev. 2003) (citing Sutherland v. Gross, 772 P.2d 1287, 1290 (Nev. 1989)).  "[M]ere knowledge of the contract is insufficient to establish that the defendant intended or

///

12

1  designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must

2  demonstrate that the defendant intended to induce the other party to breach the contract with

3  the plaintiff." Id. at 1268.

4      Plaintiff alleges that Defendants interfered with her contractual relations by disrupting

5  her employment contract.  However, in Nevada a party cannot, as a matter of law, tortiously

6  interfere with its own contract.  Blanck v. Hager, 360 F.Supp.2d 1137, 1154 (D.Nev. 2005)

7  (citing Bartsas Realty, Inc. v. Nash, 402 P.2d 650, 651 (1965)).   Defendants are not

8  intervening third parties.  Rather, as agents of the State of Nevada, they act as parties to the

9  contract. Therefore, any alleged misconduct could amount only to a breach of contract, not

10  tortious interference.  Because Plaintiff can prove no set of facts which would establish a basis

11  for judgment regarding her claim for tortious interference with contract, the Court dismisses

12  this claim.

13      5.    Intentional Infliction of Emotional Distress

14

15      To establish a claim for intentional infliction of emotional distress in Nevada, a plaintiff

16  must allege the following elements: (1) extreme and outrageous conduct with either the

17  intention of, or reckless disregard for, causing emotional distress, (2) severe or extreme

18  emotional distress suffered by the plaintiff, and (3) actual or proximate causation." See

19  Watson v. Las Vegas Valley Water Dist., 378 F. Supp.2d 1269, 1278 (D. Nev. 2005) (quoting

20  Olivero v. Lowe, 995 P.2d 1023, 1025 (Nev. 2000)).  "Extreme and outrageous conduct is that

21  which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a

22  civilized community.'"  Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998).

23  Accordingly, liability for emotional distress does not extend to "'mere insults, indignities,

24  threats, annoyances, petty oppressions, or other trivialities.'" Candelore v. Clark County

25  Sanitation Dist., 752 F. Supp. 956, 962 (D.Nev. 1990) (quoting RESTATEMENT (SECOND) OF

26  TORTS § 46 cmt. d (1965)).

27  ///

28  ///

13

1    In the present case, Plaintiff fails to allege conduct on the part of Defendants that would

2    rise to the level of "extreme and outrageous conduct."  Plaintiff generally alleges that the

3    Governor and Clinger inflicted emotional distress by "executing an ambush firing, by

4    attempting to coerce [Plaintiff] into tendering a resignation in order to save face, and/or after

5    the firing, into accepting a temporary position slated for elimination."  Plaintiff also asserts

6    infliction of emotional distress caused by the Governor, Clinger and Kieckhefer "in defaming

7    Plaintiff through their Press release of October 18, 2008."  Because Plaintiff fails to articulate

8    any specific facts related to the punishment and defamation she allegedly suffered, it is difficult

9    to discern what conduct Plaintiff considers to be extreme and outrageous.  Additionally, the

10    fact that a defendant's actions may frustrate, embarrass, infuriate, annoy, harass, or otherwise

11    upset a plaintiff does not automatically imply that the plaintiff has a claim of intentional infliction

12    of emotional distress in addition to the plaintiff's other causes of action. The conduct

13    complained of in this cause of action is simply not "extreme and outrageous." Burson v. State

14    of Nev. 1992 WL 246915, *5 (D.Nev. 1992).

15    Even under the liberal rules of notice pleading, Plaintiff has failed to state sufficient facts

16    to support her intentional infliction of emotional distress claim.  Although Plaintiff does not

17    need to provide support for her allegations in the Amended Complaint, she must state specific

18    conduct that enables the Court to determine whether Plaintiff may be entitled to relief if she

19    is able to prove his allegations.  "The Court is not required to accept legal conclusions cast in

20    the form of factual allegations if those conclusions cannot reasonably be drawn from the facts

21    alleged."  Clegg v. Cult Awareness Network, 18 F.3d 752, 755 (9th Cir. 1994).  Plaintiff's

22    general statements cannot support a claim for intentional infliction of emotional distress.  As

23    such, the Court dismisses this claim.

24    6.    Defamation and Defamation Per Se

25

26    Generally, a defamation claim requires the Plaintiff to show the following: (1) a false and

27    defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged

28    publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or

presumed damages.  Pope v. Motel 6, 114 P.3d 277, 282 (Nev. 2005). Certain types of

14

defamatory statements are considered to be defamatory per se, and these types of statements are actionable without proof of damages.  Id.  Nevada has recognized statements tending to injure the plaintiff in his or her business or profession as defamatory per se.  Chowdhry v. NLVH, Inc, 851 P.2d 459, 484 (Nev. 1993).

Plaintiff alleges that Defendants published defamatory statements when they issued a press release in October of 2008 stating that the employment action taken against Plaintiff was based on performance issues.  Further, Plaintiff alleges that these statements qualify as "defamation per se," because the false statements imply that Plaintiff was unfit in her profession as a certified public accountant.  Plaintiff alleges that Defendants' false statements were published negligently.  Furthermore, Plaintiff asserts that the statements were not privileged.  As a result of the defamation, Plaintiff alleges she suffered economic damages.  Accepting the truth of Plaintiff's allegations, Plaintiff has sufficiently pled a claim of defamation and this claim will therefore not be dismissed.

### 7.   Invasion of Privacy/False Light Claim

Nevada, like many other jurisdictions, has adopted the Restatement's recognition that the tort of invasion of privacy may take the following four forms: "(1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the name or likeness of another; (3) unreasonable publicity given to private facts; and (4) publicity unreasonably placing another in a false light before the public."  People for the Ethical Treatment of Animals (PETA) v. Berosini, 895 P.2d 1269, 1278 (Nev. 1995);  Restatement (Second) of Torts § 652A(2) (1977).  In this case, Plaintiff rests her invasion claim upon the fourth form of the tort - publicity placing another in a false light.

In Nevada, false light extends beyond defamation in one respect: a plaintiff need not show injury to reputation.  See Flowers v. Carville, 310 F.3d 1118, 1132-33 (9th Cir. 2002) "'The false light privacy action differs from a defamation action is that the injury in privacy actions is mental distress from having been exposed to public view, while the injury in defamation actions is damage to reputation.'"  Flowers, 310 F.3d at 1132-33 (quoting Bobby

1   <u>Berosini</u>, 895 P.2d at 1274 n. 4).  Some falsehoods may cause subjective emotional distress

2   even though they cause no loss of esteem, in which case false light may permit recovery even

3   though defamation would not.  <u>Id.</u>

4        Plaintiff has alleged emotional distress separate from injury to her reputation.  It is

5   possible that a jury could award her damages for false light but not for defamation if it found

6   that she suffered subjective distress but not reputational injury. Because of this theoretical

7   possibility, Plaintiff has alleged a viable cause of action and this claim will not be dismissed.

8        8.    <u>Violation of NRS Chapter 284</u>

9        Nevada's statutory and regulatory state employment scheme outlines procedures

10  designed to protect the interests of classified permanent state employees.  <u>See</u> NRS Chapter

11  284.  In her proposed Amended Complaint, Plaintiff adds a claim for discharge/demotion in

12  violation of NRS Chapter 284.  Specifically, Plaintiff alleges that the employment action taken

13  against her violated the following statutory provisions: NRS 284.383, requiring advance

14  warning of any alleged job deficiency and progressive discipline as a precondition to

15  termination or demotion; NRS 284.385, requiring a written statement of reasons as a

16  precondition to termination; and NRS 284.285 and 284.390, requiring just cause for

17  termination or demotion of a classified employee.[1]

18       Defendants oppose Plaintiff's claim under Chapter 284 because Plaintiff's allegations

19  "demonstrate that she was not dismissed or demoted, as defined in NRS 284.383-390."

20  Defendants continue to maintain that Plaintiff was merely transferred from one position to

21  another, not terminated or demoted, and she was therefore not entitled to notice and a

22  hearing.  However, at this stage of proceedings, any dispute in the facts asserted by the

23  parties must be resolved in Plaintiff's favor and "all allegations of material fact are taken as

24  true and construed in the light most favorable to the nonmoving party."  <u>Silvas v. E*Trade</u>

25

26       [1]  The Nevada Administrative Code ("NAC") elaborates further on the protections afforded to
state employees. The NAC requires that the employee be formally warned or reprimanded as set forth

27  in NAC 284.638 before the appointing authority may demote or dismiss the employee.  NAC
284.646(1).  Further, the authority may only demote or dismiss the employee pursuant to one or more

28  of the eighteen enumerated causes listed in NAC 284.650.  Finally, the authority must provide the
demoted or dismissed employee with a hearing and must "[s]pecify the charges, the reasons for them
and the cause of action contained in NAC 284.650 on which the proposed action is based."  NAC
284.656(1)(b)(3).

1   Mortgage Corp._, 514 F.3d 1001, 1003-04 (9th Cir. 2008).  Accordingly, taking the allegations

2   in the complaint as true, Plaintiff has stated a viable claim for violations of NRS Chapter 284.

3                                    **V.  CONCLUSION**

4           IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (#46) is

5   GRANTED IN PART and DENIED IN PART.

6           IT IS FURTHER ORDERED that THE Motion to Amend Complaint (#66) is GRANTED.

7           DATED: This __26th__ day of March, 2010.

8

9

10                                          _____

11                                          United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28